NOT DESIGNATED FOR PUBLICATION

No. 125,281

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JORGE ROMERO JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; PHYLLIS K. WEBSTER, magistrate judge. Submitted without oral argument. Opinion filed February 9, 2024. Reversed and remanded with directions.

*Mark T. Schoenhofer*, of Wichita, for appellant.

*Amber R. Norris*, assistant county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ATCHESON, P.J., ISHERWOOD and HURST, JJ.

HURST, J.: Jorge Romero Jr. appeals from the district court's order revoking and reinstating his probation. After being sentenced to probation in the present case, Romero was detained and remained incarcerated in a different county on separate charges. Prior to his release, the State moved to revoke Romero's probation for failure to report and failure to pay costs and restitution, but Romero was not directed to report or pay during his incarceration. Consistent with Romero's claims, the district court lacked substantial competent evidence supporting its revocation decision. The district court's revocation and reinstatement of Romero's probation is reversed, and this case is remanded with

1

directions to reinstate Romero's original probation and determine if its terms and conditions have been satisfied consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

The State originally charged Jorge Romero Jr. in this case with one count of felony theft, one count of misdemeanor theft, and one count of criminal use of a weapon, all class A nonperson misdemeanors, for his alleged conduct on September 13, 2018. At that the time, Romero was already facing charges in a separate case in Sedgwick County for aggravated robbery, aggravated kidnapping, and aggravated battery arising out of actions in January 2018.

As part of a plea agreement, on January 30, 2019, Romero pled no contest to two counts of class A nonperson misdemeanor theft. The same day, the district court sentenced Romero to 12 months of probation with underlying concurrent 12-month terms in jail and ordered him to pay restitution of $9,962.29.

At sentencing, the district court ordered Romero's probation to begin immediately and stated that he would be released from jail that afternoon. The prosecutor then noted to the court that there may be a "hold" on Romero due to the pending charges in Sedgwick County and that "if he does [have a hold], he's gonna have to go back to Sedgwick County" Jail. The court then explained to Romero that it would have a court services officer (CSO) "come up and visit with you now, and give you a date and time to come up and report on probation. Now, if you're in custody on that date, you need to make sure that gets communicated over here. Otherwise, it will show up as a failure to report." Romero replied, "Okay."

2

The district court then summarized the conditions of Romero's probation as follows:

> "THE COURT: The conditions of your probation will be that you not again violate the law; *that you report as directed*; that you make restitution; *that you pay the court costs and probation supervision fees*.
>
> "You're not to have any contact with the victim or victims in this case. Which would be the owner of the Audi and the dealer from which the tag was stolen. And otherwise, abide by standard conditions of probation. No drugs or alcohol. Report as directed.
>
> "Do you have any questions?
>
> "DEFENDANT ROMERO: No, Your Honor. Thank you." (Emphasis added.)

The hearing ended with the court reiterating to Romero that he needed to come back to the court after he was released from custody to report to court services. Until the State moved to revoke his probation in February 2020, there is no evidence that court services spoke with or contacted Romero after the sentencing hearing.

*Journal Entry of Sentencing*

The journal entry of the sentencing notates that Romero was sentenced to 12 months of probation with an underlying 12-month jail term and that Romero was required to pay restitution of $8,962.29 to the victim's insurance company and $1,000 to the victim. Further, the journal entry documented Romero's probation requirements as follows:

> "The defendant is granted *reporting probation of 12 months with Court Services*.
>
> "In addition to the provisions set forth in K.S.A. 21-4610, the defendant is ordered to comply with all standard probation conditions and with the following special conditions as listed below:

3

- "Submit to random but reasonable breath, blood, and/or urinalysis testing at request of C.S.O. at defendant's own expense.
- "Defendant shall not possess or consume alcohol or drugs and shall not enter taverns and/or establishments that serve liquor, cereal malt beverages, or illegal drugs.
- "Defendant shall not associate with alcoholics, illegal drug users, or people who make alcohol and/or illegal drugs available.
- "Gain and/or maintain employment.
- "Notify C.S.O. of changes in employment, residence and phone number.
- "*Pay all costs, fines, fees and restitution associated with this case, if applicable*.
- "No contact with [the victims.]
- "No contact with [another involved party.]
- "*Defendant to make minimum monthly payments*." (Emphases added.)

The journal entry erroneously cited to K.S.A. 21-4610, which was recodified as K.S.A. 2018 Supp. 21-6607.

*Probation Revocation*

On February 28, 2020, the Butler County CSO filed a motion to revoke his probation alleging failure to pay court costs and restitution and failure to report to the probation office as directed. The CSO's comment on the revocation request stated that Romero "has been in custody in the Sedgwick County Jail since sentencing in this case" and "has not completed conditions of probation in this case, due to being in custody." According to the probation revocation request, Romero's probation expired on January 30, 2023. Because of the probation revocation request, a warrant was issued and served on Romero in Sedgwick County Jail on December 20, 2021.

The district court held a probation revocation hearing in this case on May 11, 2022. The CSO confirmed she did not attend Romero's sentencing, was not present when

4

he was placed on probation, and Romero had made no restitution payments. The CSO never contacted Romero about his probation because he was in custody the entire time before the State moved to revoke his probation. The CSO followed his pending case in Sedgwick County. The CSO testified that she received a call from Romero's mother on January 31, 2019, and from his wife on April 3, 2019, each telling her that Romero was still in custody in Sedgwick County. When she spoke to Romero's wife, the CSO testified that she "did advise [Romero's wife] that he needed to contact me upon release."

The district court found that Romero violated his probation because he had not paid his restitution to the insurance company or victim and had not reported for probation. The court recognized that during the entire probation period, Romero was incarcerated for separate criminal charges that occurred before his sentencing in this case. Even so, the court noted:

> "[I]t wasn't [the CSO's] fault that he was sitting in the county jail in Sedgwick County. It wasn't [the CSO's] responsibility to find him, and go to him, and sit with him in the Sedgwick County Jail and supervise him. Like I said, he got there on his own. And it was he who had the responsibility to report to [the CSO], and not vice versa."

The court revoked and reinstated Romero's probation for one year. It also ordered Romero to pay $100 per month toward his outstanding restitution and report to probation starting that day.

On May 19, 2022, for the first time, Romero signed a conditions of probation form. This documented that his January 2019 probation was reinstated on May 11, 2022, and that he was subject to probation for 12 months. Romero timely appeals revocation of his probation.

5

On appeal, Romero's claim is that the district court erred in revoking his probation because the State failed to provide substantial competent evidence that he violated the terms of his probation. In support of his claim, Romero argues that (1) the State failed to introduce evidence of the terms and conditions of probation; (2) the court failed to provide a written statement of the evidence it relied on in finding he violated probation; (3) there was no evidence Romero was notified of the terms and conditions of probation; and (3) the court inappropriately considered conduct that occurred prior to his sentencing. .

## I. THE STATE DEMONSTRATED THE TERMS AND CONDITIONS OF ROMERO'S PROBATION

Romero claims that the State failed to prove the terms and conditions of his probation, combining two arguments. Part of this claim relates to the specific conditions upon which the district court revoked and reinstated his probation—which is addressed below. On the claim that the State generally failed to prove that it had established terms and conditions for his probation, Romero fails. The journal entry of sentencing contains the terms and conditions of Romero's probation, including the following, that the State claims Romero violated:

- "Pay all costs, fines, fees and restitution associated with this case, if applicable."
- "Defendant to make minimum monthly payments."

At the revocation hearing, the State asked the district court to "take judicial notice of the Journal Entry, which shows the date of sentencing; and length of probation time; and money due and owing," and the court confirmed that it took judicial notice.

6

Moreover, during sentencing the district court stated that "[t]he conditions of your probation will be that you not again violate the law; *that you report as directed*; that you make restitution; *that you pay the court costs and probation supervision fees*," and these instructions were later included in the transcript of the probation revocation hearing.

While these terms and conditions lack the specificity that the State later sought to rely upon for revocation, the terms and conditions nonetheless exist. There is no requirement that the probation terms and conditions contain more specificity, but the lack of specificity does create a potential problem in enforcement proceedings as shown here. See *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1045 (10th Cir. 2017) (conditions of probation in a probation order may be further illuminated by the judge's statements or other events which aid the court in determining whether the defendant was sufficiently forewarned of the proscribed activities); *State v. Mireles*, No. 102,997, 2011 WL 135027, at *4 (Kan. App. 2011) (unpublished opinion) ("The conditions of probation must be reasonably clear and understandable so that probationers can conform their conduct to those requirements supporting [*sic*] they intend to do so.").

II.     THE TRANSCRIPT OF THE DISTRICT COURT'S PROBATION REVOCATION HEARING AND ITS WRITTEN ORDER SUFFICIENTLY DEMONSTRATE THE COURT'S FINDINGS AND REASONING

Romero claims that the district court violated his due process rights by failing to provide an adequate written record of the evidence relied upon for its decision to revoke and reinstate his probation. Due process requires that the district court identify "'the evidence relied on and reasons for revoking probation.'" *State v. Hurley*, 303 Kan. 575, 582, 363 P.3d 1095 (2016). This court exercises unlimited review over questions of due process violations in probation revocation. 303 Kan. at 580.

When revoking probation:

"'Minimum due process includes written notice of the claimed violations of probation, disclosure to the probationer of the evidence against him or her, the opportunity to be heard in person and to present evidence and witnesses, the right to confront and cross-examine adverse witnesses, a neutral and detached hearing body, *and a written statement by the factfinder as to the evidence relied on and reasons for revoking probation*. The probationer also has a right to the assistance of counsel.'[Citation omitted.]" (Emphasis added.) *Hurley*, 303 Kan. at 582 (quoting *State v. Billings*, 30 Kan. App. 2d 236, 238, 39 P.3d 682 [2002], and finding that K.S.A. 2011 Supp. 22-3716 satisfies "all constitutional requirements" set forth by the United States Supreme Court).

Here, the district court's written findings are not viewed in isolation. A transcript of the revocation hearing is available and can be used to ascertain the court's findings. See *Morishita v. Morris*, 702 F.2d 207, 209 (10th Cir. 1983) (Where there is a transcript of the proceedings, "[t]he failure of the state judge to make written findings of fact and conclusions of law does not alone render the revocation hearing fundamentally unfair. [Citations omitted.]"). Rather, "written findings are constitutionally required only if the transcript and record before the judge do not enable a reviewing court to determine the basis of the judge's decision to revoke probation." 702 F.2d at 210; see also *Black v. Romano*, 471 U.S. 606, 616, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985) (finding that "[t]he memorandum prepared by the sentencing court and the transcript of the hearing provided the necessary written statement explaining the evidence relied upon and the reason for the decision to revoke probation").

The district court explained that it found Romero in violation of the terms and conditions of his probation because "[h]e was ordered to pay . . . and he has not done that. He was also ordered to report. Reporting is part of the rehabilitative process, and he did not do that."  The court did acknowledge that Romero was "locked up" and that is why he did not report, but then explained "he was locked up in Sedgwick County by his own

8

doing." The transcript of the district court's reasoning for revocation and the written journal entry of revocation adequately detail the court's reasoning and the evidence relied upon to support that reasoning. Contrary to Romero's contention, those findings were not related to his conduct prior to sentencing in this case. However, whether the district court's stated reasoning was supported by the facts and law is a separate issue addressed herein.

III.    THE DISTRICT COURT ABUSED ITS DISCRETION BY REVOKING AND REINSTATING ROMERO'S PROBATION

While the district court sufficiently articulated its reasoning for revoking Romero's probation, this court must still determine whether that reasoning was legally and factually sound. The initial decision to sentence a defendant to probation rather than jail is an act of grace, but once that grace is granted, the defendant has a conditional liberty interest, subject to substantive and procedural due process, in remaining on probation. Therefore, once probation is imposed, it may be revoked only upon a determination that the defendant failed to meet the conditions of probation. *Hurley*, 303 Kan. at 581. Before revoking probation, a district court must (1) make a factual determination that the probationer violated a condition of probation and (2) make a discretionary determination of the appropriate disposition, which could include revocation. *State v. Horton*, 308 Kan. 757, 760-61, 423 P.3d 548 (2018) (quoting *State v. Skolaut*, 286 Kan. 219, 227, 182 P.3d 1231 [2008]).

In the first stage, the State must demonstrate by a preponderance of the evidence that the probationer violated the terms of probation. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). This court reviews the district court's factual findings regarding a probation violation for substantial competent evidence, which is legal and

9

relevant evidence that "a reasonable person might accept as being sufficient to support a conclusion." *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007) (quoting *State v. Luna*, 271 Kan. 573, 574-75, 24 P.3d 125 [2001]). Once the State has shown a probation violation by a preponderance of the evidence, the district court has the discretion to impose a statutorily permitted sanction, which could include probation revocation. *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022); see K.S.A. 2022 Supp. 22-3716(b) and (c) (requiring graduated sanctions before revocation of probation in certain circumstances).

This court reviews the district court's imposition of a probation sanction for an abuse of discretion. A court abuses its discretion when its decision is based on an error of law, an error of fact, or was "arbitrary, fanciful, or unreasonable." *Tafolla*, 315 Kan. at 328.

*A. The district court made an error of fact in finding that Romero violated a term or condition of probation by failing to report.*

Romero argues the State failed to show that he was notified of the terms and conditions of probation including how often he was supposed to report to the CSO, that he needed to report in person, or that he needed to report while in jail. Essentially, Romero claims that the State revoked his probation for failing to report in a manner and method that was not included in the terms and conditions of his probation. While the terms and conditions required Romero to report for probation, there were no specific timing or manner requirements—other than to report *after* his release from custody—included in the journal entry or the district court's oral recitation.

Upon being granted probation in Butler County, the district court told Romero to "report as directed" for probation and the court told him to report to court services for probation *after* his release from jail. The court also notified Romero that someone from court services would speak to him after the hearing to provide him information on when

10

to report, and that he needed to notify the CSO if he was in custody on the designated date or it would show up as a failure to report. The State provided no evidence that anyone from court services ever contacted Romero to advise him when or how to report. Romero's CSO testified that she never contacted Romero with directions for reporting. Therefore, the only reporting information came from the district court at sentencing.

At some point shortly after the sentencing hearing, Romero was transferred to Sedgwick County Jail to be detained for his previously pending charges. While he was in Sedgwick County Jail, it is undisputed that Romero's family called the CSO twice to tell her Romero was still in jail. According to the CSO, she never contacted Romero regarding his probation and told Romero's wife "that he needed to contact me upon release." However, prior to his release from custody in a separate case, the State sought to revoke his probation in part for his failure to report to the CSO. It is difficult to understand how Romero could have violated the condition to report for probation *after his release* when he had yet to be released. See, e.g., *State v. Ledesma*, No. 108,433, 2013 WL 4565014, at *1, 4 (Kan. App. 2013) (unpublished opinion) (condition precedent triggering the defendant's duty to report never occurred); *State v. Reineke*, No. 94,028, 2006 WL 2465459, at *4 (Kan. App. 2006) (unpublished opinion) (no evidence that the defendant was directed to report while in jail); but see *State v. Tupas*, No. 100,100, 2009 WL 1140323, at *2 (Kan. App. 2009) (unpublished opinion) (affirming revocation of defendant's probation where there was no evidence he was told to do anything other than report regardless of his circumstances).

In *Reineke*, after being convicted, the defendant was sentenced to presumptive probation with a special condition requiring him to report to the community corrections officer "'as directed.'" 2006 WL 2465459, at *1. When he was sentenced to probation, Reineke was already in jail for pending charges for which he was convicted and sentenced a few months later. As a result, the defendant was in jail or prison throughout the entire probation period. The State eventually revoked Reineke's probation for failure

11

to report and ordered him to serve his sentences. On appeal, the panel in *Reineke* held that the district court abused its discretion in revoking the defendant's probation because there was no evidence he was directed to report for probation while in jail on other charges. In fact, he had been told to report after release from jail, and he was never "directed" nor required to report while in jail. 2006 WL 2465459, at *4.

Similarly, in *Ledesma* the defendant was facing warrants in a different county and was transferred there after he was sentenced to probation in a later case. The district court later revoked the defendant's probation for failure to report and failure to pay and reinstated his probation. The appellate court found the defendant had been told to report after his outstanding warrants were "'taken care of,'" but one of the warrants was never "'taken care of'" because he was imprisoned. 2013 WL 4565014, at *4. Therefore, as in *Reineke*, the condition precedent to his requirement to report was never met, and thus the district court erred in finding the defendant violated the terms and conditions of his probation. 2013 WL 4565014, at *4.

Romero followed the reporting directions of the district court and the CSO. The court directed him to notify the CSO if he was in custody—which he did—and the CSO told his wife that he must report once released from custody. As in *Ledesma*, a condition precedent to Romero's reporting requirement—his release from custody—never occurred. See 2013 WL 4565014, at *4. Because the State sought to revoke Romero's probation before his release from custody, Romero was denied the ability to follow the court's reporting directions and there was insufficient evidence for a reasonable person to conclude he violated the terms and conditions of probation by failing to report. Romero's probation was incorrectly revoked on this basis, and the district court erred. See *Inkelaar*, 38 Kan. App. 2d at 315.

In addition to this factual error, this court is puzzled about Romero's legal ability to simultaneously serve his jail sentence and report for the start of probation. Probation is

12

"a procedure under which a defendant, convicted of a crime, is released by the court after imposition of sentence, without imprisonment . . . subject to conditions imposed by the court . . . ." K.S.A. 2022 Supp. 21-6603(g). While probation is not inherently inconsistent if imposed consecutive to an incarceration term in an unrelated case, this court is reluctant to say that concurrent probation and incarceration—even in unrelated cases—are compatible.  See *State v. Dubish*, 236 Kan. 848, 854-55, 696 P.2d 969 (1985) (sentences of simultaneous probation and incarceration in the same case are inconsistent); *State v. Torkelson*, 29 Kan. App. 2d 672, 675, 30 P.3d 320 (2001) (noting that probation consecutive to incarceration in different cases is not prohibited). Probation is antithetical to simultaneous incarceration.

> *B.      The district court made an error of fact when it found Romero failed to pay restitution as required in the terms and conditions of his probation.*

Romero claims the State also failed to establish that he violated the terms and conditions of his probation by failing to pay restitution. Although this panel agrees that the district court erred in revoking Romero's probation based on a failure to report, this panel still reviews his second argument because revocation on one valid ground is sufficient even if another ground was invalid. See *State v. Grossman*, 45 Kan. App. 2d 420, 428, 248 P.3d 776 (2011) (when the district court relied on one valid ground to revoke probation, it does not matter if another ground was invalid).

Although the evidence demonstrates that Romero was directed to pay costs, fees, and restitution as a term of his probation, there was no evidence about how and when he needed to make such payment. The journal entry of sentencing includes the amounts owed and ordered Romero to "[p]ay all costs, fines, fees and restitution associated with this case" and "to make minimum monthly payments." At the probation revocation hearing, the CSO testified only that Romero was ordered to pay but never made any payments while in jail. There was no evidence the CSO ever contacted Romero to give

13

him an amount to pay monthly or directions for payment. Presumably Romero would have received such information upon reporting to the CSO after his release from custody, as directed by the district court, and as the CSO directed Romero's wife.

Here, there was no evidence Romero had any meeting with his CSO or any probation intake, and he never received information or documentation about how to make the required payments. Practically, his probation never began because he was in custody on a separate case the entire time preceding the State's motion to revoke his probation. Additionally, the district court told Romero to report to probation only after his release from custody. As with the reporting requirement, there was no evidence Romero was required to make payments prior to his release from custody or before reporting for probation. It was only after the district court revoked and reinstated his probation that Romero received direction on how and when to pay the costs, fees, and restitution—the district court could not revoke his probation for failing to pay the unidentified monthly amount to an unidentified location in an unidentified manner.

Romero was directed to report to the CSO for probation *after* his release from custody. Because Romero was not released before the State sought to revoke his probation, he was not given the ability to follow the terms and conditions of his probation to report. Therefore, the district court lacked substantial competent evidence that Romero violated the terms and conditions of his probation by failing to pay costs, fees, and restitution because he had no directions for payment prior to his release from custody. See *Inkelaar*, 38 Kan. App. 2d at 315.

CONCLUSION

At the time of Romero's sentencing, the district court knew he was likely to be detained in a separate matter and directed Romero to report to the CSO for his probation *after* his release from custody in that separate case. The CSO knew he was incarcerated,

14

and Romero followed directions to have his family keep the CSO notified of his continued incarceration. Despite the clear directions to report after his release from custody, the State sought to revoke Romero's probation prior to his release from custody—the condition precedent to the terms and conditions of his probation. Romero had no instructions to report or make restitution payments while incarcerated in the separate case. The district court abused its discretion in revoking and reinstating Romero's probation because it lacked substantial competent evidence supporting the allegations that Romero violated the terms and conditions of his probation.

The district court's revocation and reinstatement is reversed and remanded with directions to reinstate Romero's original probation, determine if Romero has completed the terms and conditions of the original probation, and enter any further orders that may be necessary and consistent with this opinion.

Reversed and remanded with directions.