F I L E D
United States Court of Appeals
Tenth Circuit

April 25, 2006

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JEFFREY J. SPERRY,

      Petitioner-Appellant,

  v.

DAVID R. MCKUNE, Warden,
Lansing Correctional Facility; PHIL
KLINE, Kansas Attorney General,

      Respondents-Appellees.

No. 04-3472

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 04-CV-3056-MLB)**

Submitted on the briefs:[*]

Kari S. Schmidt, Conlee Schmidt & Emerson, LLP, Wichita, Kansas, for
Petitioner-Appellant.

Kristafer R. Ailslieger, Assistant Attorney General, Office of the Kansas Attorney
General, Topeka, Kansas, for Respondents-Appellees.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

Before **TYMKOVICH**, **McKAY**, and **BALDOCK**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

Jeffrey Sperry appeals a district court order denying his petition for habeas relief from a first-degree murder conviction. We granted a certificate of appealability on the following issues: (1) whether Kansas's first-degree murder statute is unconstitutionally vague; (2) whether Sperry's due process rights were violated by the prosecution's use of a witness's purportedly coerced statements to impeach the witness's trial testimony; and (3) whether Sperry had ineffective assistance of counsel at trial and on appeal. We affirm.

## BACKGROUND

On November 25, 1995, Jeffrey Sperry shot and killed Lonnie Mallicoat with a handgun. Sperry obtained the gun from his girlfriend, Reagan Brown, who had previously been Mallicoat's girlfriend. Sperry was charged with first-degree murder, which Kan. Stat. Ann. § 21-3401(a) (Supp. 1994) defined as "the killing of a human being committed . . . [i]ntentionally and with premeditation." The lesser-included offense of second-degree murder differed, for purposes relevant here, by requiring only that the killing be "intentional[ ]." *Id.* § 21-3402(a).

At trial, Sperry testified that he and Mallicoat had been arguing, and that he pointed the gun at Mallicoat's car, fearing he might be run over, when "the gun just went off." Tr. at 327. Brown testified that she saw Mallicoat "trying to throw the car in reverse when he got shot," *id.* at 293, and that she initially told a detective that she "didn't see [Sperry] shoot [Mallicoat]," *id.* at 289, but later told the detective that she saw the shooting, *id.* at 291. Brown also testified that Sperry telephoned her from jail and suggested that she take responsibility for the shooting.

The jury found Sperry guilty of first-degree murder and he appealed. The Kansas Supreme Court affirmed, rejecting his arguments that he (1) was denied a fair trial, and (2) received ineffective assistance of counsel when Brown testified, notwithstanding a violation of her Fifth Amendment rights when questioned by detectives. *State v. Sperry*, 978 P.2d 933, 950-51 (Kan. 1999). Sperry was also unsuccessful in his state post-conviction proceedings. There, the Kansas Court of Appeals noted that Brown had written Sperry's post-conviction counsel, stating that her testimony and statements were truthful and uncoerced. *Sperry v. Kansas*, No. 87,421, 2003 WL 22119218, *2-3 (Kan. Ct. App. Sept. 12, 2003). The court also rejected Sperry's argument that the first-degree murder statute was vague because the definition of "premeditation" made first- and second-degree murder indistinguishable. *Id.* at *3. The Kansas Supreme Court denied review.

Sperry turned to the United States District Court, seeking federal habeas relief. The court denied relief and this appeal followed.

## DISCUSSION

### I. Standards of Review

We review the denial of federal habeas relief de novo, applying the same standards used by the district court. *Jackson v. Ray*, 390 F.3d 1254, 1259 (10th Cir. 2004), *cert. denied*, 126 S. Ct. 61 (2005). Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a federal court may not grant habeas relief on a claim adjudicated on the merits in state court, unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). Sperry does not contend that the state court decisions suffer from unreasonable fact determinations which would implicate § 2254(d)(2). Thus, we proceed under § 2254(d)(1).

A state-court decision is contrary to the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set

forth in Supreme Court cases, or if the decision confronts a factual scenario that is materially indistinguishable from a Supreme Court case but reaches a different result. *Brown v. Payton*, 125 S. Ct. 1432, 1438 (2005). A state-court decision involves an unreasonable application of the Supreme Court's clearly established precedents if the decision applies Supreme Court precedent to the facts in an objectively unreasonable manner. *Id.* at 1439.

## II. Due Process - Vagueness

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "The Constitution does not, however, impose impossible standards of specificity," and courts "should remain ever mindful that general statements of the law are not inherently incapable of giving fair and clear warning." *United States v. Platte*, 401 F.3d 1176, 1189 (10th Cir. 2005) (quotations and citations omitted).

"A statute can be void for vagueness not only on its face, but as applied, as a result of 'an unforeseeable and retroactive judicial expansion of narrow and

precise statutory language.'" *Id.* (quotations omitted). Judicial review of a penal statute, however, is generally "restricted to consideration of the statute as applied in a particular case, provided the statute does not threaten to chill the exercise of constitutional rights." *Id.* at 1189-90 (quotations omitted).

Sperry cannot claim, of course, that Kansas's first-degree murder statute chills constitutionally protected conduct. Thus, we examine the statute only as applied here. AEDPA's deferential standard of review controls our examination, as the Kansas Court of Appeals decided the vagueness issue on the merits, albeit in summary fashion, *see Goss v. Nelson*, 439 F.3d 621, 635-36 (10th Cir. 2006) ("In the context of applying 28 U.S.C. § 2254(d), our focus is on whether the *result* reached by the state court contravenes or unreasonably applies clearly established federal law, not on the extent of the reasoning followed by the state court in reaching its decision.").

As noted above, whether an intentional killing statutorily qualifies as first- or second-degree murder depends on whether the killing was premeditated. *Compare* Kan. Stat. Ann. § 21-3401(a) (first-degree murder requires a premeditated, intentional killing) *with id.* § 21-3402(a) (second-degree murder requires an intentional killing). At trial, the jury was instructed that Sperry was guilty of first-degree murder if he "intentionally killed Lonnie Mallicoat . . . with premeditation." Twenty-Ninth Judicial District Court Case No. 95 CR 2246 at 91.

"Premeditation" was defined as "to have thought over the matter beforehand." *Id.* at 97. "Intentionally" was defined as "conduct that is purposeful and willful and not accidental." *Id.* The jury was also instructed that Sperry could be found guilty of the lesser included offense of second-degree murder if, among other things, he "intentionally killed" Mallicoat. *Id.* at 93.

Sperry argues that defining "premeditation" as "to have thought over the matter beforehand" renders the first-degree murder statute indistinguishable from the second-degree murder statute. He reasons that such a definition makes "premeditation" synonymous with "intentional" because "to intend to do something is to think about it beforehand." Aplt. Supp. Opening Br. at 16. Thus, the argument is that all intentional killings are necessarily premeditated killings. Two justices of the Kansas Supreme Court might agree. In a concurring opinion in *State v. Saleem*, 977 P.2d 921, 931 (Kan. 1999) (Allegrucci, J., concurring), one justice asked, "How does one *intentionally* kill another human being without thinking about it beforehand?" Another justice adopted the same view in *State v. Pabst*, 44 P.3d 1230, 1237 (Kan. 2002) (Lockett, J., concurring). Nevertheless, a majority of the Kansas justices remain convinced that "to have thought over the matter beforehand" "'adequately conveys the concept that "premeditation" means something more than the instantaneous, intentional act of taking another's life. To have thought the matter over beforehand means to form a design or intent to kill

before the act.'" *State v. Martis*, 83 P.3d 1216, 1238 (Kan. 2004) (quoting *State v. Jamison*, 7 P.3d 1204, 1212 (Kan. 2000)).

Under AEDPA's standard of review, the Kansas Court of Appeals' rejection of Sperry's vagueness argument neither contravened nor unreasonably applied federal due process law. An ordinary person could discern a difference between a killing that is committed intentionally and a killing that is committed intentionally and with premeditation, if premeditation involves thinking a matter over beforehand and intentionally involves purposeful, willful and non-accidental conduct. Thinking something "over" indicates a quantum of reflection—premeditation—absent from the deliberative process necessary to act intentionally—"to act purposefully, willfully and not by accident."

Nor would an ordinary person be unable to distinguish between first- and second-degree murder in light of the evidence presented at Sperry's trial. Evidence that Sperry "thought over the matter beforehand," rather than simply acted purposefully, willfully and not by accident, included that (1) Sperry had some involvement in drugs with Mallicoat, (2) Mallicoat owed Sperry money, (3) Sperry believed that Mallicoat had told Brown he intended to use the gun to kill Sperry, (4) Sperry possessed a shotgun shell engraved with Mallicoat's name, (5) Sperry and Mallicoat "had been arguing" about Brown immediately before the shooting, Tr. at 325, and (6) Mallicoat "was trying to throw the car in reverse

-8-

when he got shot," *id.* at 293.  The first-degree murder statute, as applied here through the jury instructions to the evidence offered at trial, was sufficiently clear and understandable.  For the same reasons, we reject Sperry's argument that the statute encourages arbitrary and discriminatory enforcement.

Sperry next argues that the Kansas Court of Appeals acted contrary to, or unreasonably applied, due process law in light of the prosecutor's closing remark that premeditation can develop rapidly.  Specifically, the prosecutor remarked:

> If you'll notice, [the premeditation instruction] doesn't say you have to think it over a day or five hours beforehand.  You just have to think about it beforehand.  Think over the matter beforehand.  And how long do you think it takes, Ladies and Gentlemen, that it takes for someone to think something over?  You've already - - as soon as I said that, you started thinking about what I said, didn't you?  Which means you have already premeditated on what I said, because that's all it takes to form a thought process, to think something over.

Tr. at 429-30.  Sperry argues that this remark allowed the jury to find him guilty simply "because he thought it first."  Aplt. Supp. Opening Br. at 14.  But the prosecutor stopped short of conveying a message that premeditation can be virtually instantaneous, and therefore synonymous with "intentionally."  *Cf. State v. Morton*, 86 P.3d 535, 542 (Kan. 2004) (holding that prosecutor's closing remark, "One squeeze of a trigger is all it takes [to premeditate]," violated due process).  We find no misapplication of due process law based on these remarks.

Finally, we reject Sperry's argument that the jury equated "premeditation" with "intentionally" based on three notes sent to the judge during deliberations:

"What is a hung jury?" Tr. at 449, "What is reasonable doubt?" *id.* at 451, and "If there is disagreement between jury members as to the verdict of murder in the first degree or murder in the second degree-intentional, is the jury directed to select the lesser offense," *id.* at 453. The notes could just as likely have been sent due to conflicting views of the evidence, rather than an inability to distinguish between "premeditation" and "intentionally."

### III. Due Process - Impeachment Evidence

Because the Kansas state courts reached the substance of Sperry's argument that Brown's impeachment violated his due process rights, we apply AEDPA deference. At trial, Brown was cross-examined using statements she had made to police after the shooting, apparently without a prior *Miranda* warning.[1] The record contains no evidence of coercion or undue pressure, or any reason to doubt that Brown's statements to the police were voluntary. In fact, Brown submitted a letter in post-trial proceedings denying that her statements and testimony were untruthful or coerced. Sperry nonetheless argues that the use of impeachment evidence obtained in violation of the *witness's* Fifth Amendment rights violates his due process rights at trial. We disagree.

---

[1]  *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Sperry cites no relevant Supreme Court precedent in support of his argument, and we are aware of none.[2] Indeed, the Supreme Court has held that statements taken in violation of a defendant's Fifth Amendment rights, while inadmissible as part of the prosecution's case-in-chief, are admissible to impeach the defendant, so long as the statements were made voluntarily and without coercion. *See Oregon v. Hass*, 420 U.S. 714, 722-24 (1975); *Harris v. New York*, 401 U.S. 222, 224-26 (1971). If a defendant's voluntary and uncoerced statements are admissible for impeachment purposes, we cannot discern how a witness's voluntary and uncoerced statements are any less tolerable. In both cases, the limited admissibility of such evidence aids the jury in ascertaining the truth while deterring the government from its extraction in violation of *Miranda*. *See Hass*, 420 U.S. at 722. Precluding a witness's impeachment would disturb this truth-seeking/deterrent balance and allow "the shield provided by *Miranda* . . . to be perverted to a license to testify inconsistently, or even perjuriously." *Id.* Consequently, we decline to do so.

Our holding is not inconsistent with *United States v. Gonzales*, 164 F.3d 1285 (10th Cir. 1999). In *Gonzales*, the question was whether a witness's statements were the product of police coercion. Although the trial court had

---

[2] Sperry cites *James v. Illinois*, 493 U.S. 307 (1990), in support of this argument. In that case, however, the Supreme Court held that a defense witness may not be impeached by evidence illegally obtained from the defendant. *Id.* at 308-09. Here, Brown was purportedly impeached with her own statements.

-11-

suppressed the statements, on appeal we concluded that the statements had not been coerced.  We therefore held that the statements could be admitted at trial. We did not have to reach the question of whether "defendants' due process rights would be implicated if the subject witness was coerced into making false statements and those statements were admitted against defendants at trial." *Id.* at 1289 (italics omitted).  To the contrary, the effect of a witness's impeachment on the defendant's due process rights was not at issue in *Gonzales*.  In fact, the court found that the witness's statements were not the product of coercion, and therefore admissible.  That is the case here.

The Kansas state courts therefore neither contravened nor unreasonably applied Supreme Court precedent in deciding Sperry's impeachment issue.

## IV.  Assistance of Counsel

The Sixth Amendment's counsel clause is violated when counsel performs deficiently and prejudices the defense.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  Sperry first argues that his trial counsel was ineffective for failing to challenge the first-degree murder statute as vague.  He raised this argument before the Kansas Court of Appeals, which rejected it, believing that it had been examined and eliminated on direct appeal.  *Sperry v. Kansas*, 2003 WL 22119218,

at *5. But the Kansas Supreme Court does not mention the argument in its opinion. Consequently, our review is not constrained by AEDPA because there has been no state court adjudication on the merits. Thus, we review the federal district court's resolution of the argument, applying de novo review for questions of law and clear-error review for questions of fact. *Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).

The district court ruled that Sperry could not show that he was prejudiced by trial counsel's failure to assert a vagueness challenge because the first-degree murder statute was not vague. For the reasons discussed above in Part II, we agree that the statute was not vague. Sperry's counsel, therefore, was not ineffective for failing to assert vagueness at trial. *See Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) (observing that "if the issue is meritless, its omission will not constitute deficient performance" (quotation omitted)).

Sperry next argues that his appellate counsel was ineffective for failing to argue on appeal to the Kansas Supreme Court that the first-degree murder statute was vague and that Brown's statements were coerced. "A claim of appellate ineffectiveness can be based on counsel's failure to raise a particular issue on appeal, although it is difficult to show deficient performance under those circumstances because counsel 'need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood

of success on appeal.'" *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). The Kansas Court of Appeals does not appear to have reached this argument on the merits, and therefore, AEDPA does not guide our consideration. We conclude that Sperry's appellate counsel, like his trial counsel, did not perform deficiently in omitting a vagueness challenge to the first-degree murder statute. As for appellate counsel's performance on the coercion issue, we note that Mr. Sperry raised the issue to the Kansas Supreme Court in a pro se brief. Consequently, appellate counsel's failure to also raise it would not have been prejudicial. Further, as discussed above in Part III, the coercion issue was meritless, and therefore its omission by appellate counsel was not deficient performance.

Sperry finally contends that appellate counsel was ineffective for failing to raise on appeal trial counsel's failure to argue vagueness and coercion. For the reasons stated above, this contention also lacks merit.

## CONCLUSION

The judgment of the district court is AFFIRMED. Sperry's motion to dismiss his appellate counsel and to withdraw her brief is DENIED.[3]

---

[3] We direct the Clerk of this court to file the motion, which was provisionally received on December 6, 2005.