FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**December 16, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

ALEN DEAN O'BRYANT,

Petitioner - Appellant,

v.

SCOTT NUNN, Warden,

Respondent - Appellee.

No. 22-6098
(D.C. No. 5:21-CV-00153-R)
(W.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **HARTZ**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

An Oklahoma jury convicted petitioner Alen Dean O'Bryant of four counts of

child sexual abuse and the state court sentenced him to four consecutive terms of life

imprisonment. Mr. O'Bryant argues his convictions violated his constitutional rights

because he received ineffective assistance of trial counsel, state witnesses and the

prosecutor impermissibly vouched for the victim and otherwise prejudiced

Mr. O'Bryant, and cumulative error rendered the trial fundamentally unfair.

After failing to obtain relief in the state courts, Mr. O'Bryant submitted a

federal habeas corpus petition under 28 U.S.C. § 2254. The district court denied the

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

petition and declined to issue a certificate of appealability ("COA"). Mr. O'Bryant

subsequently applied for a COA from this court. Because Mr. O'Bryant fails to make

a substantial showing of a constitutional violation, we decline to issue a COA and we

dismiss this matter.

## I.    BACKGROUND

In 2018, an Oklahoma jury convicted Mr. O'Bryant of four counts of child

sexual abuse. The jury heard testimony from the child, her mother, and individuals to

whom she allegedly disclosed the abuse: her school principal, her school counselor,

the Department of Human Services ("DHS") caseworker handling her case, the

medical examiner, and the forensic interviewer. The jury also heard from two defense

witnesses: a friend of the child's family, who was also the child's pediatrician, and an

expert witness who was a pediatric psychologist. The court sentenced Mr. O'Bryant

to four consecutive life sentences.

On direct appeal, Mr. O'Bryant argued he received ineffective assistance of

counsel in violation of his Sixth and Fourteenth Amendment rights. As relevant here,

he argued counsel performed deficiently by failing to (1) present extrinsic evidence

to impeach the child's mother, who testified she believed her daughter's allegations

against Mr. O'Bryant after an initial period of doubt; (2) object to the introduction of

a video recording of the forensic interview of the child as cumulative; (3) object to

testimony by various witnesses who improperly vouched for the child's credibility,

particularly the medical examiner, who testified she found the child's statements to

be consistent with her statements in the forensic interview; and (4) adequately advise

Mr. O'Bryant of his right to testify by failing to prepare him to testify, perform mock examinations or cross-examinations, or discuss what to expect if he did choose to testify, rendering his waiver of his right to testify involuntary and unknowing. Mr. O'Bryant argued these failures prejudiced him.

As relevant here, Mr. O'Bryant also argued the trial court allowed testimony by various witnesses that bolstered the child's credibility in violation of state evidentiary law. He particularly objected to the medical examiner's testimony that in the majority of cases, children do not lie about sexual abuse; that she found the child's statements reliable because they were consistent with her statements in the forensic interview; and that in 95% of cases in which sexual abuse has occurred there are no abnormal medical findings that would indicate abuse. Mr. O'Bryant also argued the prosecutor improperly vouched for the child's truthfulness and called Mr. O'Bryant a liar, rendering his trial fundamentally unfair in violation of the Fifth and Fourteenth Amendments. Finally, he argued cumulative error denied him a fair trial.[1]

The Oklahoma Court of Criminal Appeals ("OCCA") affirmed Mr. O'Bryant's conviction in a Summary Opinion. The OCCA concluded Mr. O'Bryant was not denied the effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), because counsel's actions did not fall below reasonable standards of

---

[1] Mr. O'Bryant also argued the trial court erred under state evidentiary law by admitting hearsay evidence and the state statute allowing child hearsay evidence to be introduced violated the Sixth Amendment. Mr. O'Bryant does not renew these arguments in his habeas petition.

professional conduct and any objections to the complained-of evidence would have been overruled. It also concluded the medical examiner did not impermissibly vouch for the child. The OCCA further determined Mr. O'Bryant had forfeited his arguments as to other witnesses and the prosecutor by failing to object at trial, and on plain error review, the OCCA determined the statements were not improper. Finally, the OCCA concluded there were no individual errors that could have contributed to cumulative error.

Mr. O'Bryant sought relief under 28 U.S.C. § 2254 in the United States District Court for the Western District of Oklahoma. After reviewing the petition on the merits and receiving the recommendation of a magistrate judge, the district court denied relief and declined to issue a COA.

As to the ineffective assistance of counsel claim, the district court concluded the OCCA's determination that Mr. O'Bryant suffered no such deprivation to be reasonable because (1) the decision not to introduce extrinsic evidence was a reasonable tactical decision, (2) any objection to the complained-of testimony would have been overruled, and (3) Mr. O'Bryant cannot show he was unaware of his right to testify because he explicitly waived that right and alleged no facts showing his counsel stopped him from exercising it.

The district court also determined that the OCCA's conclusion the allegedly vouching testimony did not deny Mr. O'Bryant a fair trial was reasonable. As to the medical examiner's testimony, the district court reasoned that even if it constituted "vouching" it did not deny Mr. O'Bryant a fair trial because (1) it was not used to

4

bolster the child's credibility; instead, it was given in response to the defense's theory that the lack of medical findings meant lack of abuse, and that is the only purpose for which the prosecution used it; and (2) the jury had a chance to evaluate the child's credibility for itself by hearing her testify and undergo cross-examination. The district court found the OCCA's decision as to the other witnesses' allegedly vouching testimony reasonable for similar reasons: the jury heard from the child herself in direct and cross-examination, and the prosecutor's statements were not made to bolster the child's credibility but to respond to a theory the defense had put forward that the child. had fabricated the allegations.

As to the alleged prosecutorial misconduct, the district court determined the OCCA's decision was reasonable because it was not improper for the prosecutor to draw "'the jury's attention to evidence that would enhance or diminish a witness's credibility'"; the prosecutor was not making the statements to bolster credibility but to show that the defense theory made no sense; and the prosecutor did not indicate any personal belief in the witnesses' credibility or indicate he knew something more than the evidence showed. ROA Vol. I at 248 (quoting *Thornburg v. Mullin*, 422 F.3d 1113, 1132 (10th Cir. 2005)). Furthermore, the district court noted the trial court instructed the jurors that they "alone were to determine the credibility of witnesses." *Id.* The district court further indicated that the prosecutor's referring to Mr. O'Bryant as a liar was intended to point out an inconsistency in the defendant's story and therefore within the bounds of proper prosecutorial conduct. The district court also

noted that, even if these acts constituted misconduct, they were not so inappropriate as to render the trial fundamentally unfair.

Finally, the district court concluded the OCCA's decision on cumulative error was not contrary to or an unreasonable application of clearly established federal law because Mr. O'Bryant had not established the existence of two or more errors. The district court declined to issue a COA because Mr. O'Bryant had not demonstrated that reasonable jurists would find the constitutional claims debatable.

Mr. O'Bryant now seeks a COA from this court.

## II.    DISCUSSION

A federal court may grant habeas relief only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). This is a highly deferential standard designed to allow federal courts to interfere with state-court decisions only in cases of "'extreme malfunctions in the state criminal justice systems'" on issues of federal law. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). "Federal habeas relief is not available to correct state law errors." *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1043 (10th Cir. 2017) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)).

Where the state court decision rested on an independent and adequate state procedural ground, such as failure to make a trial objection, the claim is procedurally

6

barred from habeas review unless the state court proceeded to review for plain error and denied relief because the claim lacked merit under federal law. *Cargle v. Mullin*, 317 F.3d 1196, 1206 (10th Cir. 2003) ("In such a case, there is no independent state ground of decision and, thus, no basis for procedural bar. Consistent with that conclusion, the state court's disposition would be entitled to § 2254(d) deference because it was a form of merits review." (internal citation omitted)). Because Oklahoma's plain error test is virtually identical to a federal due process analysis, the OCCA's application of its plain error test "constitute[s] an adjudication on the merits of [a] due process claim." *Hancock v. Trammell*, 798 F.3d 1002, 1011–12 (10th Cir. 2015).

Before this court may examine the merits of a § 2254 petition, the petitioner must obtain a COA from either the district court or this court. 28 U.S.C. § 2253(c)(1)(A). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To show the denial of a constitutional right, the "applicant should 'include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle [him] to relief.'" *Leatherwood*, 861 F.3d at 1043 (quoting *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996)). We will grant a COA only if the petitioner "'sho[ws] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The district court declined to issue a COA, so we must consider Mr. O'Bryant's application for a COA at the outset. Fed. R. App. P. 22(b)(2).

### A.    *Ineffective Assistance of Counsel*

Mr. O'Bryant first seeks a COA on whether he was denied the effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights. He contends trial counsel performed deficiently by failing to present impeachment evidence, object to prejudicial testimony, and adequately advise him of his right to testify.

To show ineffective assistance of counsel, a petitioner must show both that counsel's performance "fell below an objective standard of reasonableness" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687–88. "Our review of counsel's performance under the first prong of *Strickland* is a highly deferential one" and "the petitioner bears a heavy burden when it comes to overcoming that presumption." *Harmon v. Sharp*, 936 F.3d 1044, 1058 (10th Cir. 2019) (brackets and internal quotation marks omitted). "To be deficient, the performance must be outside the wide range of professionally competent assistance. In other words, it must have been completely unreasonable, not merely wrong." *Id.* (quotation marks omitted). The *Strickland* standard "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington*, 562 U.S. at 110. Finally, to show prejudice, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's

8

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In the § 2254 context, a state prisoner's task in showing ineffective assistance is even greater because we also defer to the state court's determination that counsel's performance was not deficient. *See Harmon*, 936 F.3d at 1058 (describing review of ineffective assistance claims in § 2254 petitions as "doubly deferential" (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009))). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The OCCA determined trial counsel's actions did not fall below reasonable standards of professional conduct and trial counsel had not chosen a deficient strategy. Reasonable jurists would agree that the district court properly denied habeas relief under our highly deferential standard.

## 1.    Failure to Present Extrinsic Evidence

Mr. O'Bryant argues counsel ought to have presented extrinsic evidence to try to impeach the child's mother. At trial, the child's mother testified she had initially disbelieved her daughter's allegations but had come to believe them when she watched the video of the forensic interview in which the child described the abuse in detail. Mr. O'Bryant suggests counsel ought to have presented evidence implying the child's mother in fact *never* believed the child; she had only claimed to do so to get her children back from state custody. The proffered evidence, Mr. O'Bryant

9

maintains, would have included a statement from the child's mother about her initial disbelief of the allegations and the pressure she felt from DHS to say she believed the child as well as affidavits, photographs, and text messages showing the child's mother continuing a relationship with Mr. O'Bryant even after she claimed to believe he had sexually abused the child.

As the district court correctly found, the OCCA's decision that these omissions did not constitute ineffective assistance of counsel was consistent with *Strickland* because the omissions were not unreasonable. *Strickland*, 466 U.S. at 687–88. To be constitutionally deficient, the actions of counsel must be "completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation marks, citation, and brackets omitted). The alleged evidence would have been largely redundant of the child's mother's live testimony—she admitted her initial and prolonged disbelief of her daughter's story, testified extensively about the pressure she felt from DHS to say she believed her daughter to get her children back, and explained she did not want to separate from Mr. O'Bryant but felt intense pressure from DHS to do so. Deciding not to introduce duplicative evidence is a reasonable tactical decision. *See DeRosa v. Workman*, 679 F.3d 1196, 1218–19 (10th Cir. 2012).

Moreover, there is no reasonable probability this evidence would have led jurors to acquit Mr. O'Bryant. Duplicative evidence is "of only marginal value" and we generally refuse to find its omission prejudicial. *Hanson v. Sherrod*, 797 F.3d 810, 832 (10th Cir. 2015). Furthermore, the jurors had plenty of evidence with which

to make their own determination of the child's credibility regardless of whether her mother believed her: they heard the child testify about the abuse, saw the video recording of the forensic interview, and heard other witnesses testify about the child's disclosures of abuse.

Because counsel's failure to introduce extrinsic evidence was neither deficient nor prejudicial, reasonable jurists would not debate that the district court properly denied habeas relief on this basis.

### 2. Failure to Object to Cumulative and "Vouching" Testimony

Mr. O'Bryant next argues counsel was ineffective for failing to object to certain evidence including (1) the video recording of the forensic interview as cumulative of the child's live testimony, and (2) the medical examiner's testimony as impermissibly "vouching" for the child under state law.

As the district court rightly determined, the OCCA's decision that counsel was not deficient on these grounds was reasonable because these objections would have been futile. The OCCA found the video recording was not cumulative and the challenged testimony did not constitute impermissible vouching under Oklahoma law. Thus, any such objection would have been overruled, and failing to make futile objections is neither deficient nor prejudicial. *See Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (explaining failure to make meritless argument at trial was not ineffective); *Parker v. Scott*, 394 F.3d 1302, 1321 (10th Cir. 2005) (denying habeas relief where counsel failed to object to allegedly vouching statements because the statements did not impermissibly vouch for the witness under Oklahoma law);

11

*Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998) (explaining counsel's failure to make futile argument was neither deficient nor prejudicial).

**3.      Failure to Advise Mr. O'Bryant of His Right to Testify**

Mr. O'Bryant argues trial counsel failed to advise him adequately regarding his right to testify in his defense. He admits he acknowledged at trial that he had discussed his right to testify with counsel and waived his right to do so, but he argues now he was not fully informed because "there was no mock direct examination, and no sample cross-examination, no discussion of what questions to expect, from either defense counsel or the State, and no preparation at all for what that might have been like or why it was important." COA Request at 19.

The OCCA's determination that counsel performed adequately is entitled to deference. *Harmon*, 936 F.3d at 1058. But even if the OCCA's decision was unreasonable and counsel should have done more to prepare Mr. O'Bryant to testify, Mr. O'Bryant has not shown that failure to do so prejudiced him. He suggests he would have chosen to testify if he had been better informed because he was defenseless without his own testimony. But he was not defenseless—defense counsel vigorously cross-examined the State's witnesses throughout the trial and put on two defense witnesses to undermine the State's evidence and raise doubts about Mr. O'Bryant's guilt. Furthermore, Mr. O'Bryant does not explain what testimony he would have given or why it would have overcome the extensive evidence the jury ultimately found credible. In sum, he has not shown a reasonable probability of a different outcome had his counsel further discussed the possibility of testifying.

12

Because reasonable jurists would not debate the district court's denial of habeas relief due to counsel's failure to more fully inform him of his right to testify, Mr. O'Bryant is not entitled to a COA on this issue.

### B.    Due Process

Mr. O'Bryant argues that various trial court failures and prosecutorial misconduct rendered his trial fundamentally unfair in violation of his due process rights.

A criminal trial is fundamentally unfair in violation of due process if it is "fatally infected" with acts "of such quality as necessarily prevents a fair trial." *Lisenba v. California*, 314 U.S. 219, 236 (1941). "[A]part from trials conducted in violation of express constitutional mandates, a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten . . . that the proceeding is more a spectacle or trial by ordeal than a disciplined contest." *United States v. Augenblick*, 393 U.S. 348, 356 (1969) (first citing *Moore v. Dempsey*, 261 U.S. 86, 91 (1923) (explaining trial would be constitutionally void if "counsel, jury and judge were swept to the fatal end by an irresistible wave of public passion"); then citing *Rideau v. Louisiana*, 373 U.S. 723, 726 (1963) (finding due process violation where court denied change of venue because local television program showed defendant confessing such that a local trial "could be but a hollow formality"), *overruled on other grounds by Brecht v. Abrahamson*, 507 U.S. 619 (1993); and then citing *Brown v. Mississippi*, 297 U.S. 278, 285–87 (1936) (holding conviction and sentence based on brutally coerced confession to violate due process)).

The district court properly concluded Mr. O'Bryant showed no denial of due process to justify habeas relief.

### 1.    Vouching for the Child

Mr. O'Bryant argues he was deprived of due process because the trial court allowed various witnesses to vouch for the credibility of the child—*i.e.*, the witnesses allegedly told the jury whom to believe and thereby invaded the province of the jury as the arbiters of credibility. He primarily objects to the medical examiner's testimony that (1) most children's disclosures of sexual abuse are true, (2) she found the child's statements to her to be consistent with what she had been told of the forensic interview, and (3) the lack of medical findings indicating sexual abuse did not rule out sexual abuse but was in fact the norm in sexual abuse cases. He also objects to (1) the DHS caseworker's testimony that she did not think the child was lying because the child never faltered in her story; (2) the forensic interviewer's statements that the acts described by the child were not something a child would talk about unless they actually happened; and (3) the child's mother's statement that she eventually came to believe the child's allegations.

Mr. O'Bryant argued this claim to the OCCA exclusively under state law. Analyzing the claim under state law, the OCCA found these witnesses did not engage in impermissible vouching. The OCCA explained that the medical examiner's testimony "incidentally corroborated the other evidence but it did not tell jurors what result to reach." ROA Vol. I at 153. As for the other witnesses, the OCCA found the objection to their testimony waived for lack of objection at trial. Proceeding to review for plain error, the court determined the testimony did not improperly vouch for the victim or tell the jury what result to reach.

Mr. O'Bryant has not shown that the OCCA's resolution of this issue was contrary to established federal constitutional law. At the state-court level, Mr. O'Bryant based his objection exclusively on state evidentiary rules, and "[a] habeas applicant cannot transform a state law claim into a federal one merely by attaching a due process label." *Leatherwood*, 861 F.3d at 1043; *see also Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules").

To the extent the OCCA reviewed for plain error, its decision was not contrary to or an unreasonable application of any clearly established federal due process standard. Mr. O'Bryant points to no Supreme Court case clearly establishing that vouching testimony violates the Due Process Clause or renders a trial fundamentally unfair. *Cf. Parker*, 394 F.3d at 1310 (rejecting argument by habeas petitioner that vouching testimony violated due process because no Supreme Court case was on point). The only Supreme Court case Mr. O'Bryant cites in support of his argument is *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88–89 (1891), which upheld a jury instruction that the jury could reject a diagnosis made by a medical expert if it did not find it credible, explaining that it was the jury's province to determine the credibility of testimony and weigh it against contrary evidence. *Aetna* stands for the general principle that the jury is the arbiter of credibility; *Aetna* does not discuss "vouching" testimony at all or establish that such testimony violates due process.

15

Furthermore, even if the challenged testimony constituted impermissible vouching, it did not render the trial fundamentally unfair because these statements had minimal, if any, effect on the trial's outcome. *See Hanson*, 797 F.3d at 843 ("An inquiry into the fundamental fairness of the trial requires an examination of the entire proceedings, including the strength of the evidence against the [petitioner]."). The jury heard from the child herself and could make its own credibility determinations based on the child's testimony and other testimony corroborating it, including others' testimony about the child's disclosures to them and about their professional experiences with and/or understanding of childhood disclosures of sexual abuse. Furthermore, the judge provided cautionary instructions to the jury about their role as the sole arbiters of credibility.

Mr. O'Bryant attempts to shore up his argument with cases from this and other circuits about the impermissibility of vouching testimony. Such authority cannot substitute for a Supreme Court case on point. *See Grant v. Trammell*, 727 F.3d 1006, 1020 (10th Cir. 2013) ("'[C]ircuit precedent may [not] be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule." (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam))). Furthermore, vouching testimony could be impermissible for any number of reasons without rendering the trial fundamentally unfair.[2] *See, e.g.*, *United States v. Vest*, 116 F.3d 1179, 1185 (7th Cir.

---

[2] None of the circuit court cases Mr. O'Bryant cites determined vouching testimony rose to the level of a constitutional error. *See United States v. Hill*, 749 F.3d 1250, 1263 (10th Cir. 2014) (determining such testimony violated only the Federal Rules of Evidence); *Parker v. Scott*, 394 F.3d 1302, 1310–12 (10th Cir. 2005)

1997) (finding such testimony improper under the Federal Rules of Evidence but concluding it did not render the trial unfair).

Finally, even if vouching testimony might render a trial fundamentally unfair, Mr. O'Bryant has not shown it rendered *his* trial fundamentally unfair. The Supreme Court has found trials fundamentally unfair in circumstances in which the unfairness so pervaded every aspect of the trial that it rendered the trial a sham. *See Lisenba*, 314 U.S. at 236–37 (explaining use of a coerced confession to obtain a guilty verdict rendered a trial fundamentally unfair); *Moore*, 261 U.S. at 89–92 (concluding a trial was fundamentally unfair where petitioners were convicted of murder and sentenced to death at a time of inflamed public opinion due to a race riot and they were represented by an attorney appointed at the beginning of the forty-five-minute trial). The challenged evidence here—limited in scope and duration, largely offered to rebut defense theories rather than bolster credibility, and tempered by instructions from the court—did not undermine the trial's basic integrity.

---

(determining that the OCCA had *not* ruled unreasonably by denying relief based on allegedly vouching testimony very similar to the testimony here); *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) (determining vouching testimony violated the Federal Rules of Evidence); *United States v. Vest*, 116 F.3d 1179, 1185 (7th Cir. 1997) (finding such testimony improper under the Federal Rules of Evidence but concluding the district court did not plainly err because of the judge's cautionary instructions and the limited duration of the testimony); *Engesser v. Dooley*, 457 F.3d 731, 736–38 (8th Cir. 2006) (finding it reasonable for the state court to find witness's testimony about another witness's credibility not to render the trial fundamentally unfair); *United States v. Alcantara-Castillo*, 788 F.3d 1186, 1197–98 (9th Cir. 2005) (finding a due process error based on prosecutorial misconduct in eliciting vouching testimony but not based on the presence of the vouching testimony itself).

In sum, reasonable jurists would agree that the district court properly denied habeas relief on this ground because there is no clearly established constitutional rule against vouching testimony, and even if the challenged testimony was improper, it did not render the trial fundamentally unfair.

## 2.    Prosecutorial Misconduct

Mr. O'Bryant contends that several statements by the prosecutor in closing arguments violated his due process rights, including (1) vouching for the child by calling her description of abuse unexpected and shocking and suggesting her mother was being truthful when she said she believed the child, and (2) calling Mr. O'Bryant a liar for telling a police officer he could not have abused the child because he was impotent while his ex-wife testified his impotence was successfully treated at the time.

The OCCA noted that none of the alleged misconduct was objected to at trial and determined there was no plain error because the prosecutor's statements were proper comments on the evidence or were made in response to the arguments of defense counsel.

The district court correctly determined the OCCA's rejection of the prosecutorial misconduct claim was not contrary to clearly established constitutional law. To be sure, the Supreme Court has been clear that prosecutors must not inject their personal opinions about evidence into a trial. *See Darden v. Wainwright*, 477 U.S. 168, 180–83 (1986); *id.* at 189–92 (Blackmun, Brennan, Marshall and Stevens, JJ., dissenting); *United States v. Young*, 470 U.S. 1, 8–9 (1985); *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 647, 648 n.23 (1974). The purpose of this rule is to prevent the jury's misapprehension that the prosecutor possesses evidence not presented at trial and to avoid inducing the jury to trust the government's judgment rather than its own. *Young*, 470 U.S. at 13. However, in *Darden*, *Young*, and *Donnelly*, even egregious violations of this rule were held not to render the trial fundamentally unfair because, in context, they would not have prejudiced the jury. *Darden*, 477 U.S. at 181–82; *Young*, 470 U.S. at 16–20; *Donnelly*, 416 U.S. at 643–48. This is because "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

The only case Mr. O'Bryant cites in which the Supreme Court has held that a prosecutor's comments rendered a trial fundamentally unfair involved pervasive misbehavior presenting an intolerable risk of prejudice. In *Berger v. United States*, 295 U.S. 78 (1935), the prosecutor misstated the facts and the testimony, suggested statements had been made to him personally out of court, and assumed prejudicial facts not in evidence. *See* 295 U.S. at 85–89. The Court reiterated that a prosecutor's obligation "in a criminal prosecution is not that it shall win a case, but that justice shall be done" and a prosecutor must "refrain from improper methods calculated to produce a wrongful conviction," especially given jurors' general faith that prosecutors are behaving with integrity. *Id.* at 88. This was especially true in a weak case that depended on the testimony of an accomplice with a long criminal record. *Id.* at 88–89. In such circumstances, "prejudice to the cause of the accused is so highly probable that we are

19

not justified in assuming its nonexistence." *Id.* at 89. The Court noted the "misconduct was pronounced and persistent," not "slight or confined to a single instance." *Id.*

Here, to determine that the OCCA's rejection of the prosecutorial misconduct claim was unreasonable, a jurist would need to view the prosecutor's few isolated comments in closing arguments as not just improper but capable of overpowering the jury's ability to make its own credibility determination. In the context of this trial, no reasonable jurist would take that view. On the contrary, all reasonable jurists would agree that the district court properly denied habeas relief on this issue.

**3.    Cumulative Error**

Mr. O'Bryant contends that the cumulative effect of the errors at trial rendered the trial fundamentally unfair. The OCCA disagreed, determining there could be no accumulated error because there was no individual error. Reasonable jurists would not quarrel with the district court's denial of habeas relief on this ground because, if there were errors, they were insufficient to render the trial fundamentally unfair. Thus, Mr. O'Bryant is not entitled to a COA on this issue.

## III.    CONCLUSION

Mr. O'Bryant has not made a substantial showing of denial of a constitutional right. Reasonable jurists would therefore agree that the district court properly denied his habeas petition. Thus, we DENY Mr. O'Bryant's application for a COA and

DISMISS this matter.

Entered for the Court


Carolyn B. McHugh
Circuit Judge